UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

JOHNNY F. VAN HORN                                                    PLAINTIFF


v.                          CASE NO. 3:07-CV-00032 GTE


ARKANSAS BLUE CROSS AND
BLUE SHIELD, A MUTUAL
INSURANCE COMPANY, et al.                                          DEFENDANTS


<u>**ORDER**</u>

Presently before the Court is Plaintiff's Objection to Removal and Motion to Remand.

**I.  Background**

Plaintiff states that on July 10, 2006, he was injured in a motor vehicle accident in

California.  Plaintiff also states that he filed a personal injury action in California against Jorge

Paris, the party at fault in the accident, and that GMAC, Paris' insurer, settled the litigation for

the limits of the policy maintained for Paris.  Additionally, Plaintiff states that he maintained

under-insured motor vehicle insurance through State Farm Insurance Company ("State Farm"),

and obtained the limits of the under-insured coverage after State Farm determined that the limits

paid by GMAC were insufficient to compensate him for his damages.

On February 23, 2007, Plaintiff filed this declaratory judgment action in the Circuit Court

of Craighead County, Arkansas.  Plaintiff states that Arkansas Blue Cross Blue Shield (directly

and through its agents and affiliates, Blue Cross of California and Blue Shield of California),

which paid $130,240.37 to various medical providers who treated the plaintiff for the injuries he

1

suffered from the motor vehicle accident, claims entitlement to subrogation for payment of said

medical expenses.  Plaintiff argues that he has not been made whole because his present and

future damages cause by the motor vehicle accident exceed the limits of the GMAC policy and

the limits of the State Farm under-insured coverage.  Therefore, Plaintiff asserts that the Court

should enter an order declaring that the Defendants have no right of subrogation or other interest

in settlement proceeds from the personal injury action or from the under-insured coverage

maintained by the Plaintiff.

In the motion presently before the Court, Plaintiff asserts that this Court lacks subject-

matter jurisdiction, and the case should be remanded to state court pursuant to *Empire*

*Healthchoice v. McVeigh*, 126 S. Ct. 2121, 2126 (2006).  Defendants assert that this Court has

federal question jurisdiction because this case is governed by federal common law under *Empire*

and *Boyle v. United Technologies Corp*., 487 U.S. 500 (1988).  Defendants also assert that

removal is proper under the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1).

## II.  Motion to Remand

### A.  Federal Common Law and *Empire*

"The Federal Employees Health Benefits Act of 1959 (FEHBA), 5 U.S.C. § 8901 *et seq*.

(2000 ed. and Supp. III), establishes a comprehensive program of health insurance for federal

employees."  *Empire Healthchoice v. McVeigh*, 126 S. Ct. 2121, 2126 (2006).  "The Act

authorizes the Office of Personnel Management (OPM) to contract with private carriers to offer

federal employees an array of health-care plans."  *Id*. (citing 5 U.S.C. § 8902(a) (2000 ed.)).

"Largest of the plans for which OPM has contracted, annually since 1960, is the Blue Cross Blue

Shield Service Benefit Plan (Plan), administered by local Blue Cross Blue Shield companies."

*Id*. at 2126-27.

"Title 28 U.S.C. § 1331 vests in federal district courts 'original jurisdiction' over 'all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Id*. at 2131. "A case 'aris[es] under' federal law within the meaning of § 1331, . . . if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Id*. (citing *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 27-28, 103 S. Ct. 2841, 77 L. Ed.2d 420 (1983)).

In *Empire*, the United States Supreme Court considered the "proper forum for reimbursement claims when a plan beneficiary, injured in an accident, whose medical bills have been paid by the plan administrator, recovers damages (unaided by the carrier-administrator) in a state-court tort action against a third party alleged to have caused the accident." *Id*. at 2127. The Court noted the preemption clause of the FEHBA, found at 5 U.S.C. § 8902(m)(1), displacing state law on issues relating to "coverage or benefits" afforded by health-care plans, which states:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

*Id*. However, the Court found that 28 U.S.C. § 1331 did not encompass the carrier's action seeking reimbursement of the amount paid for the beneficiary's medical care, stating, "[N]othing in FEHBA's text prescribes a federal rule of decision for a carrier's claim against its insured or an alleged tortfeasor to share in the proceeds of a state-court tort action." *Id*. at 2127-29.

The Court also reviewed the appeals court's decision, which concluded that "federal

jurisdiction exists over this dispute only if federal common law governs Empire's claims," and

"courts may create federal common law only when 'the operation of state law would (1)

significantly conflict' with (2) 'uniquely federal interest[s].'" *Id.* at 2130 (citing 396 F.3d 136,

140 (2d Cir. 2005) (quoting *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988))). The

Court noted that while the Second Circuit "acknowledged that the case involved distinctly federal

interests," it found that "Empire had not identified 'specific ways in which the operation of state

contract law, or indeed of other laws of general application, would conflict materially with the

federal policies underlying FEHBA in the circumstances presented.'" *Id.* (citing 396 F.3d at 150

(Sack, J., concurring) ("Empire has made a substantial showing that the *first* part of the *Boyle* test

has been met because this case implicates 'uniquely federal interests,' . . . in providing uniform

healthcare coverage for federal employees and in decreasing the administrative costs associated

with such insurance."); *Id.* at 142.). The Supreme Court specifically stated that "the appeals

court determined that Empire has not demonstrated a 'significant conflict . . . between an

identifiable federal policy or interest and the operation of state law," and "[u]nless and until that

showing is made, there is no cause to displace state law, much less to lodge this case in federal

court. *Id.* at 2132-33.

The Court further discussed *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988),

stating:

> [I]n *Boyle,* the Court telescoped the appropriate inquiry, focusing it on the
> straightforward question whether the relevant federal interest warrants
> displacement of state law. *See* 487 U.S., at 507, n. 3, 108 S.Ct. 2510. Referring
> simply to "the displacement of state law," the Court recognized that prior cases
> had treated discretely (1) the competence of federal courts to formulate a federal
> rule of decision, and (2) the appropriateness of declaring a federal rule rather than
> borrowing, incorporating, or adopting state law in point. The Court preferred "the

more modest terminology," questioning whether "the distinction between displacement of state law and displacement of federal law's incorporation of state law ever makes a practical difference." *Ibid. Boyle* made two further observations here significant. First, *Boyle* explained, the involvement of "an area of uniquely federal interest ... establishes a necessary, not a sufficient, condition for the displacement of state law." *Id.,* at 507, 108 S.Ct. 2510. Second, in some cases, an "entire body of state law" may conflict with the federal interest and therefore require replacement. *Id.,* at 508, 108 S.Ct. 2510. But in others, the conflict is confined, and "only particular elements of state law are superseded." *Ibid.*

*Empire*, 126 S. Ct. at 2132.

As stated above, in his motion, Plaintiff asserts that this Court lacks subject-matter jurisdiction, and the case should be remanded to state court pursuant to *Empire*.  Defendants assert that this Court has federal question jurisdiction in this case because this case is governed by federal common law under *Empire* and *Boyle*.  Specifically, Defendants assert that this case satisfies both the first and second prongs of the two-prong *Boyle* test because (1) uniquely federal interests are involved and (2) the Arkansas State Made Whole Doctrine significantly conflicts with the Plan's express reimbursement terms, frustrates FEHBA's objective of national uniformity in benefits and plan administration, and conflicts with the policy of the FEHBA of cost-containment.  Essentially, Defendants ask this Court to distinguish the Supreme Court's decision in *Empire*.

In support of their assertion that the Supreme Court did not foreclose the possibility that federal jurisdiction may exist in cases such as this, Defendants note that courts continue to engage in the *Boyle* conflict analysis in FEHBA reimbursement cases.  For example, the Supreme Court remanded *Empire*'s companion case, *Cruz v. Blue Cross & Blue Shield of Illinois*, 126 S. Ct. 2964 (2006), for further consideration in light of *Empire*.  On remand, the Seventh Circuit requested briefing on the following:

5

> Whether federal common law should be applied to this case under the *Boyle* test. [Citation omitted].  Specifically, the parties should analyze the second prong of the *Boyle* test and evaluate in detail whether Appellants have demonstrated a significant conflict . . . between an identifiable federal policy or interest and the operation of state law, given the presence of the common fund doctrine in Illinois. *See Empire*, 126 S. Ct. at 2132-33 (quoting *Empire Health Choice Assurance, Inc. v. McVeigh*, 396 F.3d 1[3]6, 150 (2d Cir. 2005) (Sack, J., concurring)).

*Cruz v. Blue Cross & Blue Shield of Ill.*, No. 03-4170 (7th Cir. Jan. 8, 2007) (order requiring briefing).[1]  Additionally, Defendants cite *Blue Cross Blue Shield Health Plan of Ga., Inc. v. Gunter*, No. 3:05-cv-039-JTC, slip op. at 2-5 (N.D. Ga. Jan. 31, 2007).[2]  Although the district court in *Gunter* determined that no conflict existed because under Georgia law the state's made whole doctrine did not apply to FEHBA plans, the court considered whether that case could be distinguished from *Empire* by fulfillment of the second prong of the *Boyle* test.  *Id.*

Furthermore, Defendants rely upon the Second Circuit's statement in *Empire* that "at a later stage in the proceedings a significant conflict might arise between New York state law and the federal interests underlying FEHBA, such that the dispute would satisfy both prongs of *Boyle*. If for example, McVeigh were to defend herself in reliance upon a state law that was meant to advance a particular state policy, Empire could argue that such state law–whether statutory or common law–conflicts with federal interests and requires the application of federal common law." 396 F.3d at 142.  However, the Second Circuit went on to explain that in that case, the court would still not have federal jurisdiction because the well-pleaded complaint rule would not be satisfied.  *Id.*

Defendants also cite *MedCenters Health Care v. Ochs*, 26 F.3d 865 (8th Cir. 1994), in

---

[1]Exhibit 2, Defendants' Joint Opposition to Motion to Remand.

[2]Exhibit 3, Defendants' Joint Opposition to Motion to Remand.

opposition to Plaintiff's motion.  In *Ochs*, Minnesota's full-recovery rule required that

"subrogation will not be allowed where the insured's total recovery is less than the insured's

actual loss," except when there are "express contract terms to the contrary."  26 F.3d at 866

(citing *Westendorf v. Stasson,* 330 N.W.2d 699, 703 (Minn. 1983)).  The Eighth Circuit held that

the district court properly exercised its authority to decide the case and correctly determined that

the FEHBA preempted the state-law rule since the state law rule conflicted with the contract

provisions, which entitled MedCenters to reimbursement regardless of whether the Ochses fully

recovered their losses.  *Id*. at 866-67.  However, the opinion in *Ochs* addressed preemption

pursuant to 5 U.S.C. § 8902(m)(1), not the existence of subject matter jurisdiction pursuant to 28

U.S.C. § 1331 and the two-part *Boyle* test.

As to the second prong of the *Boyle* test, Defendants argue that Arkansas State Made

Whole Doctrine significantly conflicts with the Plan's express reimbursement terms.  Under the

Arkansas State Made Whole Doctrine, "an insurer is entitled to enforce its contractual right of

subrogation *after the insured has been fully compensated, or 'made whole,' for his total loss*."

*Franklin v. Healthsource of Arkansas*, 328 Ark. 163, 168, 942 S.W.2d 837, 839-40 (1997)

(emphasis added).  In *Franklin*, the Arkansas Supreme Court explained that "[t]his precludes the

insured from recovering twice for some of his or her damages; therefore, the insurer is entitled to

reimbursement from funds received by the insured from the third party when the insured receives

more than the total of his or her loss.  *Id*.  The Court stated, "To allow the literal language of an

insurance contract to destroy an insured's equitable right to subrogation ignores the fact that this

type of contract is realistically a unilateral contract of insurance and overlooks the insured's total

lack of bargaining power in negotiating the terms of these types of agreements."  *Id*. (citing

7

Warren Freedman, Freedman's Richards on the Law of Insurance, v. 2 § 12.6 (6th ed. 1990);

Patterson, Essentials of Ins. Law (1935), p. 122)).  The Court concluded that "[a]n insured's right

to subrogation takes precedent over that of an insurer, so the insured must be wholly

compensated before an insurer's right to subrogation arises; therefore, the insurer's right to

subrogation arises only in situations where the recovery by the insured exceeds his or her total

amount of damages incurred."  *Id*. at 168-69, 942 S.W.2d at 840.

Defendants also argue that the Arkansas State Made Whole Doctrine significantly

conflicts with the express reimbursement terms contained in the Statement of Benefits, which is

incorporated into the government contract between OPM and Blue Cross Blue Shield

Association ("BCBSA") as "Appendix A" to that contract,[3] and provides:

> If another person or entity, through an act or omission, causes you to suffer an
> injury or illness, and if we pay benefits for that injury or illness, you must agree to
> the provisions listed below. . . .
>
> > •All recoveries you obtain (whether by lawsuit, settlement, or otherwise),
> > no matter how described or designated, must be used to reimburse us in
> > full for benefits we paid.  Our share of any recovery extends only to the
> > amount of benefits we have paid or will pay to you or, if applicable, to

---

[3] Section 2.5 of the contract between the OPM and BSBSA provides:

(a) The Carrier's subrogation rights, procedures and policies, including recovery
rights, shall be in accordance with the provisions of the agreed upon brochure
text, which is incorporated in this Contract in Appendix A.  As the member is
obligated by Section 2.3(a) to comply with the terms of this Contract, the Carrier,
in its discretion, shall have the right to file suit in federal court in order to enforce
those rights.
(b) Subrogation recoveries may be reduced by any legal fees expended to obtain
the recoveries and which are not otherwise payable under this experience-rated
contract.  The amount credited to the contract shall be the net amount remaining
after deducting the related legal fees.

*See* Exhibit A, Defendant's Notice of Removal.

your heirs, administrators, successors, or assignees.

> •*We will not reduce our share of any recovery unless we agree in writing to a reduction (1) because you do not receive the full amount of damages that you claimed or (2) because you had to pay attorneys' fees.  This is our right of recovery.*[4]

Second, Defendant argues that the Arkansas State Made Whole Doctrine significantly frustrates FEHBA's objective of national uniformity in benefits and plan administration. Defendant states that a chief Congressional goal undergirding FEHBA is "uniformity in the administration of FEHBA benefits, as evidenced by the FEHBA preemption provision."  *See, e.g.*, *Hayes v. Prudential Ins. Co. of America,* 819 F.2d 921, 925 (9th Cir. 1987) ("The policy underlying section 8902(m)(1) is to ensure uniformity in the administration of FEHBA benefits.") (citing H.R.Rep. No. 282, 95th Cong., 1st Sess. 1, 4 (1977)).  Additionally, the contract between OPM and BCBSA provides: "Effective January 1, 1997, all Participating Plans shall subrogate under a single, nation-wide policy to ensure equitable and consistent treatment for all Members under the contract."[5]  Defendant argues that while Congress legislated uniformity, some states have not applied a "made whole" doctrine;[6] some states will not apply the "made whole" doctrine unless the insurance contract expressly states that it applies;[7] some states apply

---

[4]*See* Exhibit B p. 109, Defendant's Notice of Removal (emphasis added).

[5]*See* Exhibit A p. 46 at § 2.4(f) (as amended by § 4.1(j)), Defendant's Notice of Removal (emphasis added).

[6]Defendant asserts that Colorado, Delaware, Idaho, and Wyoming fall within this category.

[7]Defendant asserts that Maryland and South Dakota fall within this category.

the "made whole" doctrine as a default rule, but will permit the parties to contract out of it;[8] and

some states, including Arkansas, apply the doctrine, even if the parties have attempted to contract

out of it.[9]  Defendant asserts that within these categories, the state laws also differ with respect to

how the "made whole" doctrine applies.  Defendant state that if Plaintiff's case arose in

Maryland, Plaintiff would have to return the entire amount of benefits he received, while in

Arkansas, he would not have to return any of the benefits.  Defendant states that such disparate

results cannot be harmonized with Congress' concern for nationwide uniformity in plan

administration, and therefore, the state law significantly conflicts with federal policy and

interests.  However, as Plaintiff notes, "[a] mere federal interest in uniformity is insufficient to

justify displacing state law in favor of a federal common law rule."  *B.F. Goodrich v. Betkoski*,

112 F.3d 88, 90 (2d Cir. 1997) (citing *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 114 S. Ct.

2048, 129 L. Ed. 2d 67 (1994)).

Third, Defendant argues that the Arkansas State Made Whole Doctrine significantly

conflicts with the FEHBA policy of cost-containment.  Defendant argues that applying the

Arkansas State Made Whole Doctrine and similar state laws "would inevitably drive up the cost

of FEHBA health insurance."  *Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390,

398 (9th Cir. 2002); *Ochs*, 26 F.3d at 867.

---

[8]Defendant asserts that Alabama, California, Mississippi, the District of Columbia, Louisiana, New Hampshire, Ohio, Oklahoma, Rhode Island, and West Virginia fall within this category.

[9]Defendant states that Arkansas, Minnesota, Nebraska, Tennessee, Utah, Wisconsin, and Montana fall within this category.

The Court is persuaded by the Judge Posner's reasoning in *Blue Cross Blue Shield of Ill. v. Cruz*, 495 F.3d 510, 514 (7th Cr. 2007). There, the Seventh Circuit held that no federal-question jurisdiction existed because there was no unique federal interest at issue. *Id*. The court in *Cruz* noted that the Supreme Court directed it to reconsider its reversal of the district court's dismissal for want of federal jurisdiction and finding that the lawsuit would not arise under federal law under either the "complete preemption" or "unique federal interest" approach in light of *Empire*. *Id*. at 512. The court also noted that the Supreme Court in *Empire* identified their reversal of the district court's dismissal as "being on the wrong side" of the intercircuit conflict. *Id*.

The court stated that the Supreme Court in *Empire* distinguished between benefits and reimbursement. *Id*. at 513. The court reasoned that although the net financial position of an insured who has a potential tort claim is not uniform, but instead depends on the applicable state liability rules such as the common fund doctrine, the *benefits* themselves are uniform. *Id*. at 513-14 ("The amount of benefits is determined by the plan and is indeed uniform across states and is unaffected by the common fund doctrine. That doctrine just affects how much of a tort judgment or other judgment against (or settlement with) a third party the plaintiff gets to keep and how much he must give the insurer. This disuniformity that results is not a disuniformity in benefits."). The court further stated that "benefits" cannot be understood to include every financial incident of an illness or injury "without a federal takeover of the entire tort system." *Id*. at 514.

Here, as in *Cruz*, the disuniformity that results is not a disuniformity in benefits, but a possible disuniformity in the net financial position of insureds from state to state. Therefore, the

Court finds that it does not have federal jurisdiction under the two-part *Boyle* test.  Furthermore,

the Court questions whether the federal common law issues appear on the face of Plaintiff's well-

pleaded complaint.  However, the Court need not address that issue.

### B.  Federal Officer Removal Statute

Alternatively, Defendants assert that removal is proper under the Federal Officer

Removal Statute, 28 U.S.C. § 1442(a)(1), which provides:

> A civil action . . . commenced in a State court against any of the following may be
> removed by them to the district court of the United States for the district and
> division embracing the place wherein it is pending:
>
>> **(1)** The United States or any agency thereof or any officer (*or any person
>> acting under that officer*) of the United States or of any agency thereof,
>> sued in an official or individual capacity for any act under color of such
>> office . . . .

28 U.S.C. § 1442(a)(1) (emphasis added).  "The federal statute permits removal only if

[Defendants], in carrying out the 'act[s]' that are the subject of the petitioners' complaint, was

'acting under' any 'agency' or 'officer' of 'the United States.'"  *Watson v. Philip Morris Cos.,*

*Inc.*, -- U.S. --, 127 S.Ct. 2301, 2304-05, 168 L.Ed.2d 42 (2007) (citing 28 U.S.C. § 1442(a)(1)).

"The words 'acting under' are broad," and the Supreme Court "has made clear that the statute

must be 'liberally construed.'"  *Id.* (citing *Arizona v. Manypenny,* 451 U.S. 232, 242, 101 S.Ct.

1657, 68 L.Ed.2d 58 (1981); *Willingham v. Morgan,* 395 U.S. 402, 406-407, 89 S.Ct. 1813, 23

L.Ed.2d 396 (1969); *Colorado v. Symes,* 286 U.S. 510, 517, 52 S.Ct. 635, 76 L.Ed. 1253 (1932)).

"But broad language is not limitless. And a liberal construction nonetheless can find limits in a

text's language, context, history, and purposes."  *Id.* at 2305.

12

"[T]he removal statute's 'basic' purpose is to protect the Federal Government from the interference with its 'operations' that would ensue were a State able, for example, to 'arres[t]' and bring 'to trial in a State cour[t] for an alleged offense against the law of the State,' 'officers and agents' of the Federal Government 'acting . . . within the scope of their authority.'" *Id*. at 2306 (citing *Willingham,* 395 U.S., at 406, 89 S.Ct. 1813).

It is Defendants' burden to establish the existence of federal jurisdiction over the controversy. *Winters v. Diamond Shamrock Chemical Co.,* 149 F.3d 387, 397 (5th Cir. 1998). Defendants must demonstrate that (1) they are "persons" within the meaning of the statute; (2) that they acted pursuant to a federal officer's directions; (3) that a causal nexus exists between the Defendants' actions under color of federal office and the Plaintiff's claims; and (3) Defendants have a "colorable federal defense " to Plaintiff's claims. *Id*. at 397-400.

Defendants note a number of unpublished cases in which courts have permitted removal by FEHBA carriers under 28 U.S.C. § 1442. *See Anesthesiology Assocs. of Tallahassee v. Blue Cross Blue Shield of Fla., Inc*., No. 03-15664, slip op. at 4-5 (11th Cir. Mar. 18, 2005); *Ala. Dental Ass'n v. Blue Cross & Blue Shield of Ala., Inc*., No. 2:05-cv-01230-MEF, 2007 U.S. Dist LEXIS 685 (M.D. Ala Jan. 3, 2007).  Defendants also note that other courts have permitted removal by government contractors administering various other federal health plans or programs. *See Peterson v. Blue Cross/Blue Shield of Texas*, 508 F.2d 55, 57-58 (5th Cir. 1975) (Medicare fiscal intermediaries); *Thompson v. Community Ins. Co.*, No. C-3-98-323, 1999 U.S. Dist. LEXIS 21725, at *6-28 (S.D. Ohio Mar. 3, 1999) (HMO administering Medicare HMO plan); *Holton v. Blue Cross and Blue Shield of South Carolina*, 56 F. Supp. 2d 1347 (M.D. Ala. 1999) (carrier administering mental health services under the Civilian Health and Medical Program); *Group*

*Health, Inc. v. Blue Cross Ass'n*, 587 F. Supp. 887, 890-91 (S.D.N.Y. 1984) (carrier administering Medicare program).

Defendants places great emphasis on the Eleventh Circuit's unpublished opinion in *Anesthesiology Assocs. of Tallahassee v. Blue Cross Blue Shield of Fla., Inc.*, No. 03-15664, slip op. at 4-5 (11th Cir. Mar. 18, 2005). However, it is important to note that it, along with the other cases cited by Defendants, were decided before the Supreme Court's decision in *Watson* because Defendants filed their brief prior to *Watson*. On June 29, 2007, Defendants filed their Notice of Supplemental Authority in an attempt to distinguish *Watson*. Plaintiff filed a response to Defendants' notice on July 5, 2007.

Defendants also note that in holding that a cigarette manufacturer did not fall within the terms of 28 U.S.C. § 1442, the *Watson* Court distinguished cases in which "lower courts have held that Government contractors fall within the terms of the federal officer removal statute, at least when the relationship between the contractor and the Government is an unusually close one involving detailed regulation, monitoring, or supervision." 127 S.Ct. at 2308 (citing *Winters,* 149 F.3d 387). The Court noted that in those cases "the private contractor . . . is helping the Government to produce an item that it needs," which "goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." *Id.* For example, in *Winters,* "Dow Chemical fulfilled the terms of a contractual agreement by providing the Government with a product that it used to help conduct a war," which, at least arguably, was a job that, "in the absence of a contract with a private firm, the Government itself would have had to perform." *Id.* The Court also noted that there was "no evidence of any delegation of legal authority from the FTC to the industry association to undertake testing on the Government agency's behalf," and no

14

"evidence of any contract, any payment, any employer/employee relationship, or any principal/agent arrangement." *Id*. at 2309.

Plaintiff argues that the assertion that Defendants acted under the direction of any person or agency is contrary to the contract, which provides:

> SECTION 2.5
> SUBROGATION (JAN 2006)
>
> (a) The Carrier's subrogation rights, procedures and policies, including recovery rights, shall be in accordance with the provisions of the agreed upon brochure text, which is incorporated in this Contract in Appendix A.  As the member is obligated by Section 2.3(a) to comply with the terms of this Contract, the Carrier, ***in its discretion***, shall have the right to file suit in federal court in order to enforce these rights.

(emphasis added).  Plaintiff states that while the opinion in *Empire* suggests that previous annual contracts obgliated BCBS to make "'a reasonable effort' to recoup amounts paid for medical care," that obligation had no effect upon the Supreme Court's ruling and appears to have been removed in January of 2006.  *Empire*, 126 S. Ct. at 2127.   Plaintiff concludes that the petition fails to show any "causal connection" between federal authority and the assertion of subrogation rights and cannot be made because the exercise of such rights was discretionary.

Less than one month ago, Judge Hochberg considered this issue in *Orthopedic Specialists of New Jersey PA v. Horizon Blue Cross/Blue Shield of New Jersey*, -- F. Supp. 2d -- , 2007 WL 2937097, *3 (D.N.J. 2007).  There, Judge Hochberg noted that "there is a split of authority on the question of section 1442(a)(1)'s application to a FEHBA provider . . . ."  *Id. (citing Transitional Hosps. Corp. of La., Inc. v. La. Health Service & Indem. Co.*, No. Civ.A. 05-2221, 2005 WL 2037553, *3 (E.D. La. Aug.16, 2005) (rejecting federal officer removal jurisdiction over negligent misrepresentation claim); *Haller v. Kaiser Found. Health Plan of the Nw.*, 184 F.

Supp. 2d 1040, 1045 (D. Or. 2001) (rejecting federal officer removal jurisdiction over

malpractice and negligence claims); *Cyr v. Kaiser Found. Health Plan of Tex.*, 12 F. Supp. 2d

556, 568 (N.D. Tex.1998) (rejecting, without discussion, federal officer removal jurisdiction over

negligence, negligent concealment, tortious interference, and Texas commercial bribery statute

claims); *Arnold v. Blue Cross & Blue Shield of Tex., Inc.*, 973 F. Supp. 726, 740-41 (S.D. Tex.

1997) (rejecting federal officer removal jurisdiction over false advertising and Texas insurance

law claim); *Anesthesiology Assocs.*, No. 03-15664, slip op. (11th Cir. 2005) (permitting federal

officer removal jurisdiction over assignment of benefits claim); *Ala. Dental Ass'n*, 2007 WL

25488 at *7 (permitting federal officer removal jurisdiction over assignment of benefits claim,

but rejecting removal over claim made "solely in connection with [Plaintiff's] contractual

arrangements with [Defendant]", but nevertheless permitting supplemental jurisdiction over the

latter); *Holton v. Blue Cross & Blue Shield of S.C.*, 56 F. Supp. 2d 1347, 1351 (M.D. Ala. 1999)

(upholding jurisdiction over health care provider's claims based on Federal Officer Removal

Statute)).

Here, as in *Orthopedic Specialists*, the act of pursuing subrogation and reimbursement

from Plaintiff is the act over which a federal agency or officer must have exercised "direct and

detailed" control if this Court is to exercise jurisdiction over Defendants under the federal officer

removal statute.  The contract language makes it clear that Defendants had the discretion to

pursue such claims.  Therefore, the Court finds that Defendant has failed to demonstrate that this

Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1442(a)(1).

Accordingly,

IT IS THEREFORE ORDERED that Plaintiff's Motion to Remand (Docket No. 6) be,

16

and it is hereby, GRANTED.  This case is REMANDED to the state court from which it was

removed.

Dated this 31st day of October, 2007.

/s/Garnett Thomas Eisele
UNITED STATES DISTRICT JUDGE
